# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**DENNIS A. CHAVEZ,**

      Plaintiff,

vs.                                                                         Civ. No. 02-714 ACT

**JO ANNE B. BARNHART,**
**Commissioner of Social Security,**

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court upon Plaintiff's Motion to Reverse or Remand Administrative Decision filed February 5, 2003. Docket No.13.  The Commissioner of Social Security issued a final decision denying benefits finding that Plaintiff was not disabled. Having considered the Motion, the memoranda submitted by the parties, the administrative record and the applicable law, the Court finds that the motion is not well taken and will be denied.

## I.  PROCEDURAL RECORD

Plaintiff, Dennis A. Chavez, filed an application for benefits on December 8, 1997 alleging a disability since January 29, 1996, due to neck and back pain and headaches.  Tr. 156 and 199.  His application was denied at the initial and reconsideration level.  Tr. 112-15.  On December 3, 2000, the Appeals Council remanded the case and ordered the Administrative Law Judge (ALJ) to:

> "o     Clarify the residual functional capacity with specific regard to the postural limitations.
>   o     Obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupation base..."

Tr. 151.

The ALJ conducted a hearing August 1, 2001. At the hearing, the Plaintiff was represented by an attorney. On November 30, 2001, the ALJ made the following conclusions according to the sequential analysis set forth in 20 C.F.R.§ 404.1520(a)-(f) and Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993): the claimant has not engaged in post-onset substantial gainful activity; the claimant has an impairment or combination of impairments considered "severe;" the claimant's impairments do not meet or equal a listed impairment; the claimant's allegations regarding his limitations are not totally credible; the claimant has a residual functional capacity for the performance of light work; the claimant is not able to perform his past relevant work; although claimant's exertional limitations do not allow him to perform the full range of light work, there are significant number of jobs in the national economy that he could perform; and the claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of the decision. Tr. 18-26.

The ALJ entered his decision on November 30, 2001. Thereafter, the Plaintiff filed a request for review. On May 2, 2002, the Appeals Council issued its decision denying Plaintiff's request for review and upholding the final decision of the ALJ. Tr.7. The Plaintiff subsequently filed his Complaint for court review of the ALJ's decision on June 20, 2002.

## II. STANDARD OF REVIEW

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied correct legal standards. See Hamilton v. Secretary of Health and Human Services, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion." Andrade v. Secretary of Health and Human Svcs., 985 F.2d 1045, 1047 (10th Cir. 1993)(quoting

Broadbent v. Harris, 698 F.2d 407, 414 (10th Cir. 1983)(citation omitted)).  A decision of an ALJ is not supported by substantial evidence if other evidence in the record overwhelms the evidence supporting the decision.  See Gossett v. Bowen, 862 F.2d 802, 805 (10th Cir. 1988).

In order to qualify for disability insurance benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months, which prevents the claimant from engaging in substantial gainful activity.  See 42 U.S.C. §423(d)(1)(A); see also Thompson, 987 F.2d at 1486.  The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications.  20 C.F.R. § 404.1520(a-f).  The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled.  See Thompson, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show: 1)  he is not engaged in substantial gainful employment; 2)  he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities; 3)  his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1; or 4) he is unable to perform work he had done in the past.  20 C.F.R. §§ 404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience.  Id.

### III.  MEDICAL HISTORY

Plaintiff was injured on the job on January 29, 1996.  He was employed by Denny's Restaurant in Santa Rosa, New Mexico as a handyman.  On the date of the injury he was holding onto

a canvas when a sudden gust of wind picked it up and blew the canvas, twisting his back.  He had been lifting heavy beams before the injury.  Plaintiff did not seek medical treatment until two weeks after the injury. Tr. 239.

Dr. Anthony P. Reeve who is board certified in physical medicine and rehabilitation began treating the Plaintiff in March of 1996.  Tr. 294.  His impression was "[m]echanical strain of the lumbosacral spine" with no evidence of radiculopathy.  Tr. 297.  Dr. Reeve's initial assessment includes the following:

> In terms of this patient's current condition, I find it very difficult to believe that the patient had developed no back pain for almost one week after his injury.  This is extremely unlikely.  If the patient had a herniated disc, he would have developed pain almost immediately.  Even if the patient had suffered only trauma or a mechanical strain to the lumbosacral spine, his pain would have occurred at least within a period of twenty-four     hours.

Dr. Reeve further stated that Plaintiff could return work in a "light duty status.  He is not to lift greater than 20 pounds." Tr. 298.  Dr. Reeves noted in subsequent visits a herniated disc and that the Plaintiff was given a 10% impairment rating.  Tr. 356.

Dr. Michael McCutcheon, an orthopedic surgeon, evaluated the Plaintiff in April of 1996.  He found that:

> [t]he patient's history and clinical findings are consistent and do give evidence to support his complaints. The prognosis for continued spontaneous recovery in this patient is good. I have offered the patient bilateral lumbar facet infections, but he is very fearful of needles and does not want to go through this. *As he presents today he is not a surgical candidate, as I do not believe that the radiographic findings correlate with his clinical symptomatology at all. (emphasis added)*

Tr. 246.

Plaintiff was in a motor vehicle accident in May of 1997.  He was hit from behind.  He went to the emergency room with lower back and neck pain.  Tr. 232, 272 and 304.  He continued his treatment with Dr. Reeve.  In February of 1998, Dr. Reeve wrote a letter stating, *inter alia,* that

4

Plaintiff "will have difficulty with standing and/or performing activities for prolonged periods of time. He will not be able to lift greater than 20 pounds." Tr. 356.

According to the record, Plaintiff first sought mental health care in January of 1997. After an initial interview, Plaintiff did not pursue treatment. He did return a year later in January of 1998. The examining psychiatrist, Dr. Phillip Gonzales, noted a three year history of depression, sleep disturbance, feelings of hopelessness and suicidal ideation. Tr. 344-45. Plaintiff had started to take Elavil, an antidepressant medication, which appeared to stabilize his mood. Tr. 343, 345. Dr. Gonzales diagnosed Plaintiff with Major Depressive Disorder and alcohol dependence in full remission. He assessed Plaintiff's Global Assessment of Functioning Scale ("GAF") at 45. [1] Dr. Gonzales left the clinic a short time after beginning to work with Plaintiff. Tr. 350 and 386. Plaintiff did not want to start with a new therapist and thus was discharged from treatment. Tr. 386. Dr. Carlos Balcazar performed a consultative psychiatric examination on the Plaintiff on November 29, 1999. Tr. 367. He found that Plaintiff's attention span and capacity to concentrate were good, he communicated affect, his mood did not show any particular quality, and his emotional reactions were appropriate. Tr. 368. He diagnosed Plaintiff with Dysthymic disorder, second to physical limitations and pain, alcoholic abuse, presently in remission and regular use of marijuana. Tr. 369. He further found that Plaintiff's level of functioning during the past year had been "poor." Tr. 369.

In August of 2000 Plaintiff sought treatment at the Las Vegas Medical Center Community

---

[1]GAF scores between 41 and 50 connote, "[s]erious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job." Diagnostic and Statistical Manual of Mental Disorders, American Psychiatric Association (4th ed. 1994).

5

Based Services because of thoughts of returning to drinking due to his depression. Tr. 406-07. He was treated by Dr. Raoul Berke and Dr. George M. Leiby. Dr. Leiby diagnosed Plaintiff with major depression, chronic, recurrent, polysubstance abuse, in full remission since 1996, head injury in 1979 with chronic headaches, and history of childhood physical abuse by stepfather. Tr. 430-31. He assessed a GAF scale score of 40. Tr. 431. In October of 2001, he found that the Plaintiff was 100% disabled. He prescribed Neurotin, valproic acid and Doxepin. Id. In January of 2002, Plaintiff's GAF remained at 40. Tr. 424.

## IV. DISCUSSION

Plaintiff asserts that (1) the ALJ's physical residual functional capacity ("RFC") finding is not supported by substantial evidence and is the result of error; (2) the ALJ's mental RFC finding is not supported by substantial evidence and is legally erroneous; (3) the ALJ's credibility finding is not supported by substantial evidence and is based on error; and (4) the ALJ erred in finding that Plaintiff could perform other work.

Plaintiff's burden.

To qualify for benefits Plaintiff must demonstrate, in accordance with the relevant portion of Section 223(d) of the Act, 42 U.S.C. §423(d), that he is unable "to engage in substantial gainful activity due to a medically determinable physical or mental impairment which can be expected to result in death or last or be expected to last for at least 12 months." 42 U.S.C. §416(1)(10). The Act defines a physical or mental impairment as one "that results from anatomical, physiological or psychological abnormalities which are demonstrated by medically acceptable clinical or laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). The Commissioner's regulations require claimants to support their allegations through medically acceptable clinical and diagnostic techniques. 20 C.F.R.

§404.1513.

    The ALJ properly assessed Plaintiff's RFC.

Residual functional capacity is an administrative finding of what an individual can do despite his or her limitations. 20 C.F.R. §404.1545(a). It is based on all the relevant evidence including medical records, observations of treating physicians as well as Plaintiff's own descriptions of his limitations. The ALJ found that the Plaintiff retained the RFC:

> "to perform light work, to the extent described in Dr. Reeve's correspondence in Exhibit 10F, and with moderate limitation of function in respect to concentration and attention to tasks, but having the ability to perform one and two step processes, and with having occasional postural limitations."

Tr. 24.

Light exertional work is defined by the Social Security regulations as lifting no more than 20 pounds at a time with frequent lifting and carrying of objects weighing up to 10 pounds. 20 C.F.R. §416.967(b).

The objective medical evidence regarding Plaintiff's physical limitations included an MRI performed on March 20, 1996. The MRI showed that Plaintiff does have "possible disc material within the intervertebral foramina at L5-S1 on the left, opposite to the side of his symptoms." Tr. 293. It also showed "probable old Scheuermann's disease."[2] A follow-up MRI taken after Plaintiff's

---

[2] Scheuermann's disease is defined as osteochondrosis of the spine. Dorland's Illustrated Medical Dictionary (Dorland's), 28th ed. at 1490. Osteochondrosis is a disease of growth or ossification centers in children which begins as a degeneration or necrosis followed by regeneration or recalcification. Id. at 1200.

motor vehicle accident shows "[m]ild degenerative disc disease but no significant nerve compression is identified." Tr. 256. Subsequent radiological reports do not demonstrate significant abnormalities. X-rays of Plaintiff's spine in February of 1998 were normal for his age. Tr. 238. A teleradiology report of Plaintiff's thoracic spine showed some loss of vertical height of three thoracic vertebrae that are "probably chronic in nature (old trauma)..." Tr. 300. A teleradiology report of Plaintiff's cervical spine showed "[n]o gross abnormalities..." Tr. 305. The limitations noted by physicians are few. Dr. Reeve, his treating physician, opined that the Plaintiff "will have difficulty with standing and/or performing activities for prolonged periods of time. He will not be able to lift greater than 20 pounds." Tr. 356. This was properly noted and considered by the ALJ. Tr. 20 and 23. Also noted by the ALJ were the findings of Dr. McCutcheon that the Plaintiff was not a surgical candidate, his prognosis was good and the "radiographic findings did not correlate with his clinical symtomatology at all." Tr. 23. Moreover, there are two Physical Residual Functional Capacity Assessment's in the record which further provide substantial evidence in support of the ALJ's decision. Drs. Dillon and Stewart analyzed Plaintiff's medical records and noted the x-ray findings and Plaintiff's complaints of pain. Tr. 321-22, 336-40. 20 C.F.R. §416.927(f). Both found that Plaintiff was capable of light work.

Plaintiff's complaints of back pain are not supported by physical findings or limitations, and, factors indicating disabling pain are not present. Espino v. Shalala, 900 F. Supp. 95, 100 (W.D. Tex. 1995)(Muscle atrophy, limitation in range of motion, weight loss or impairment of general nutrition, adverse neurological test results, noticeable swellings and muscle spasm are medical factors which indicate disabling pain.). The only physician that stated Plaintiff could not work was Dr. George M. Leiby, a staff psychiatrist at the Las Vegas Medical Center. Tr. 422-431. These records were not

before the ALJ but rather were submitted to the Appeals Council. By Order of Appeals Council, May 2, 2002, these records were made part of the record. Tr. 9. Dr. Leiby is a treating physician and thus his opinion is generally entitled to substantial weight. Frey v. Bowen, 816 F.2d 508, 513 (10 Cir. 1987). However, the "treating physician rule governs the weight accorded the medical opinion of the physician who treated the claimant...relative to other medical evidence before the fact-finder, including the opinions of other physicians.." Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)(quoting Kemp v. Bowen, 816 F.2d 1469, 1476 (10th Cir. 1987). Any physician's opinion, including that of a treating physician can be rejected if his conclusion is not supported by specific findings, inconsistent with his own treatment notes or inconsistent with the record as a whole. Castellano v. Secretary of HHS, 26 F.3d 1027, 1029 (10th Cir. 1994). In this case Dr. Leiby's opinion is not consistent with the other evidence in the record. Dr. C. Balcazar, performed a psychiatric assessment on the Plaintiff on November 23, 1999. Dr. Balcazar found that the Plaintiff was depressed but was still able to work. He further found that Plaintiff's "main handicap is of a physical nature." Tr. 369.

The ALJ properly discounted Plaintiff's subjective complaints.

The ALJ must make an express credibility determination if he does not believe the Plaintiff's testimony concerning pain and limitations. A credibility finding must be "closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility is the province of the ALJ." Hamilton, 961 F.2d at 1499 (10th Cir. 1992). In this matter, the ALJ specifically found that Plaintiff's testimony regarding his limitations were not supported by the "well-reasonably medical opinions supported by the objective medical facts" of the agency consultative physicians. Tr. 23-24. The ALJ noted the lack

of medical objective evidence in support of his complaints of severe and constant pain. In addition, the ALJ properly noted that Plaintiff's daily activities were inconsistent with his subjective complaints. Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). Plaintiff testified he could sit for five to ten minutes and that he had headaches everyday that last one hour. However, Plaintiff also testified that he reads, watches television, attends church and weekly alcohol anonymous meetings and that he enjoyed going fishing with his son. Tr. 41-42. Clearly, the ALJ met his burden in providing specific reasons for finding that Plaintiff's complaints were not entirely credible.

The ALJ properly determined that Plaintiff could perform other work.

In response to a hypothetical question, the vocational expert testified that the Plaintiff could perform the work of a cleaning room attendant, parking lot attendant and the work of a laundry folding spotter. Plaintiff is correct that two of the positions identified by the vocational expert conflict with the definitions in the Dictionary of Occupational Titles ("DOT"). However, there is no conflict between the vocational expert's testimony and the DOT regarding the requirements to perform the work of a parking lot attendant. Thus, any error by the ALJ is harmless. A case will not be remanded if an ALJ's mistake is harmless error. Glass v. Shalala, 43 F.3d 1392, 1396-97 (10th Cir. 1994). Moreover, there was testimony from a vocational expert that there were 49,957 parking lot attendant jobs nationally and 199 parking lot jobs available regionally. This testimony satisfied the criteria under 42 U.S.C. §423(d)(2)(A) that work exists in significant numbers in the national or regional economy.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse or Remand Administrative Decision is denied.

_____
**ALAN C. TORGERSON**
**UNITED STATES MAGISTRATE JUDGE**